PEARL BERLA, as Administratrix, etc., of GORDON A. BERLA, Deceased, Respondent, *v.* JOHN ZAMBETTI and D. VOEPEL IRON WORKS, INC., Appellants, Impleaded with HUBBARD ERECTION CORPORATION and Others, Defendants.

First Department, May 20, 1932.

*Benjamin C. Loder*, for the appellant D. Voepel Iron Works, Inc.

*Harold L. Fierman* of counsel [*Samuel Chassey* and *Milton Kunen* with him on the brief; *Kaye, McDavitt & Scholer*, attorneys], for the respondent.

SHERMAN, J. This action was brought to recover damages for injuries resulting in the death of the plaintiff's intestate claimed to have been received by reason of the alleged negligence of the defendants. Gordon Berla was killed on May 6, 1929. He was struck by a falling iron beam while employed as an engineer by the Charles Schneider Company. The deceased was working in the course of his employment in the basement of the building. One Murray, an employee of the Hubbard Erection Corporation, which was installing the structural steel work, lost his grip on a beam, causing it to fall from the fourth floor to the basement.

The floors had not been arched or floored over as required by section 241 of the Labor Law (as amd. by Laws of 1930, chap. 603.)

Defendant Zambetti was the general contractor  Appellant D. Voepel Iron Works, Inc., had contracted to supply and erect the structural steel work for $10,500.  Under this contract, the iron contractor agreed to be responsible for any accidents that might happen in the construction of its work and be covered by workmen's compensation insurance.  The D. Voepel Iron Works, Inc., then made a subcontract for all the work in erecting the structural steel with Hubbard Erection Corporation for $1,450.  Under this contract it was provided that Hubbard Erection Corporation was to carry compensation insurance and would assume all liability for accidents that might occur through its negligence on the job.

The D. Voepel Iron Works, Inc., accordingly, carried beams to the job and left them to be put in place by Hubbard Erection Corporation.  There is, however, evidence that the treasurer of the appellant was present at the building under construction three or four times, and at the last time the steel work had progressed to the third tier, and that he knew the floor arches had not been filled in on the first and second tiers.  Appellant, under its contract, was interested in seeing to it that the steel work was erected with speed for the partial payments to it were conditioned upon the progress of that work.  It was to be paid, not for merely delivering the steel, but when and as it was put in position.  In short, the defendant was also charged with knowledge that its subcontractor was doing steel work on this building without either flooring over the tiers as they progressed, in accordance with the law, or insisting that the floors be arched with concrete before further work was done.

It is the claim of appellant that it was under no duty to see that the provisions of the Labor Law were carried out, after it had made a subcontract with Hubbard Erection Corporation for the actual work on the building.  It was held by this court in *Drummond* v. *Norton Co.* (156 App. Div. 126; affd., 213 N. Y. 670) that the duty of flooring the tiers devolves among others upon the contractor who is doing the steel erecting.  The precise point urged here is that the statutory duty undertaken by appellant may be evaded by delegating it.  This question was examined at length in *Weber* v. *Buffalo R. Co.* (20 App. Div. 292).  In that case the court said: " The company could not relieve itself from the obligation imposed by its covenant with the State, by contracting with another to fulfill it.  *  *  *  There is nothing to prevent it from employing a contractor to do the work for it; but the company cannot, by employing a contractor, get rid of its own duty to

other people whatever that duty may be." (See, also, *Sheridan* v. *Rosenthal*, 206 App. Div. 279, 284; *Quigley* v. *Thatcher*, 207 N. Y. 66, 68; *Huston* v. *Dobson*, 138 App. Div. 810; *Butts* v. *Mackey Co.*, 72 Hun, 562.)

The learned trial court charged substantially in its main charge in accordance with the views herein expressed. Some inconsistent charges were introduced on the defendant's motion. We are disposed to treat these inconsistencies as harmless error introduced by the appellant itself.

There were, however, material and reversible errors committed in the admission of certain testimony. Witnesses called by plaintiff were allowed, over defendant's objection and exception, to state speculative conclusions concerning the future prospects and earnings of the intestate. One witness testified that the intestate, who at that time was earning $70 a week, would with his experience probably earn $5,000 to $7,500 a year. Another gave his opinion that the intestate would have no difficulty in arriving at a salary from $8,000 to $12,000 per annum. A third witness prophesied that in five years he would probably be earning $5,000 to $6,000 a year; and there were other instances of this type of speculation. There is no way of knowing to what extent these unwarranted conjectures as to the precise future salary to be earned by the intestate influenced the verdict. A new trial must accordingly be directed.

The appellant Zambetti having stipulated that he does not intend to interpose a brief on this appeal, the judgment as to said appellant should be affirmed, with costs, the action severed and the judgment as to the appellant D. Voepel Iron Works, Inc., reversed and a new trial ordered, with costs to said appellant to abide the event.

FINCH, P. J., MERRELL and McAVOY, JJ., concur; MARTIN, J., concurs in result.

Judgment so far as it is in favor of the plaintiff against the defendant John Zambetti affirmed, with costs of this appeal to the plaintiff against the said defendant. Judgment in so far as it is in favor of plaintiff and against the defendant D. Voepel Iron Works, Inc., reversed, the action severed, and a new trial ordered as to said defendant, with costs to said appellant to abide the event.